MilligaN, J.,
delivered tbe opinion of the Court,
The bill in this case, alleges, that on the 9 th of December, 1861, a judgment was rendered in favor of William P. Massengill, in the Circuit Court of Jefferson County, against one Patton Howell, for the sum of $1,896.59, which was afterwards regularly transferred and assigned to the complainant, John B. Branner. At the time of the rendition of the judgment, as alleged in the bill, Patton Howell, was, and still is, the owner of a valuable tract of 'land in Jefferson County, upon which the lien of. the judgment attached. It is further stated in the bill, that soon after the rendition of the judgment, the Courts of the country were closed, in consequence of the late civil war, and that the complainant was thereby prevented from enforcing the collection of his judgment.
Subsequently, the defendants, Nance and others, filed their attachment bills against Howell, and under a decree of the Chancery Court, at Dandridge, are proceeding to subject the same land upon which it is alleged the lien of the judgment at law attached, to the satisfaction of their claim. The bill seeks to enjoin the sale of the land, and to enforce the lien of the judgment at law.
Pending the bill, one John Talbott filed his petition, praying that he and Samuel N. Pain be made *301 parties defendant thereto, with leave to answer. This application was allowed by the Chancellor, and their joint answer filed; in which it appears, that on the 12th of August, 1861, Patton Howell conveyed by deed, in trust, to Samuel N. Fain, the same land upon which the complainant seeks to enforce the lien of his judgment at law, to secure certain debts therein mentioned, which it is alleged are due and unpaid to the defendant, Talbott, the beneficiary in the trust. A copy of the trust is exhibited with the answer, from which the deed appears to have been duly registered, on the 23d of August, 1861; and on motion, the Chancellor dissolved the injunction; and thereupon, the other defendants demurred to the bill, setting down as cause of demurrer — 1st, That the bill shows upon its face, that more than twelve months had elapsed from the rendition of the judgment in favor of Mas-sengill before the filing of complainant’s bill; and 2d, That if, in law, the lien of the judgment still existed, the remedy by fieri facias, at law, was unembarrassed, &c.
The Chancellor sustained the demurrer, and dismissed the bill; from which there was an appeal to this Court.
There is no error in the record, and the decree of the Chancellor dismissing the bill, must be affirmed.
The interest which Howell had in the land sought ■ to be subjected to the complainant’s judgment, was a mere equity. The legal title, at the date of the rendition of the judgment, was in Fain, the trustee; and under section 2948 of the Code, the judgment could *302 not bind tbe equitable interest of tbe debtor, unless witbin sixty days from its rendition, a memorandum of tbe judgment, stating the amount and date thereof, with the names of the parties, had been registered in the register’s office of the county where the real estate is situated. This was not done, and no lien attached; which could be enforced otherwise than by bill in equity, either to set aside the trust or foreclose it, and subject the equitable interest to the satisfaction of the complainant’s judgment.
■ But, on the hypothesis that the lien attached, it is certainly lost by the lapse of time.
The 4th section of the Schedule to the amended Constitution, and the Act of 1865, ch. 10, sec. 1, has no application to the judgment liens.
The lien of 'a judgment at law, or a decree in equity, is not, in any just sense of the term, a Statute of limitations; and it cannot be held to be comprehended within the meaning of the Schedule, and the Act of 1865, passed pursuant thereto. The one is a bar to the alleged right of a plaintiff to recover in an action, caused by the lapse of a certain time appointed by law; or, it is the end of the time appointed by law, during which a party may sue for and recover a right: (2 Barber, 50) “While the other, says Judge Story, (1 Story’s Equity, sec. 506,) “is not in strictness, either a jus in re, or a jus ad rem; but it is simply a right to possess and retain property, until some charge attaching is paid or discharged.” The . one, effects the remedy to enforce the alleged right, and the other, as a judgment lien, retains the *303 security for tbe time limited by law, for tbe satisfaction of a right already ascertained, by a judgment or a decree of a Court of record. They are totally dissimilar in their objects and legal effects.
The Schedule to the amended Constitution, expressly provides against the operation of the Statute of limitations; and in terms, declares that no writ of error shall be refused or abated in any cause or suit decided since the 6th of May, 1861, and prior to this time, by reason of any lapse of time. The framers of this provision of the Schedule, were cautious to express all they intended to be embraced in it; and by the ordinary rules of interpretation, as well as the universally recognized maxim, expresis untas est exclu-sio al terius, it cannot be held to comprehend judgment liens. Whether the Statutes of limitations, proper, were suspended by the obstacles interposed by the war in this State, to the regular administration of justice, we need not now determine. It is enough for us to know, that the Convention which proposed the amendments to the Constitution, and the Legislature that assembled soon after their ratification by the people, assumed to meet these perplexing difficulties, and prescribed the rule of our action, which we feel bound to follow.
Affirm the decree of the Chancellor.